IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 0 3 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| DIRECTV, Inc., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   No. CIV. B-03-195 |
| | § |
| ALFREDO LOZANO | § |
| | § |
| Defendant. | § |

### PLAINTIFF DIRECTV'S ORIGINAL COMPLAINT

Plaintiff, DIRECTV, Inc. ("DIRECTV"), by and through its attorneys, complaining of the Defendant herein, respectfully sets forth and alleges, upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1.  This lawsuit involves the surreptitious possession and use of illegal devices and equipment designed to intercept and decrypt DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming. Federal communication and state laws prohibit the assembly, distribution, possession and use of the devices and equipment in question. DIRECTV brings this lawsuit seeking damages and injunctive relief against the defendant for the assembly, distribution, possession and use of illegitimate devices primarily designed to gain unauthorized access to its satellite communication signals.

## II. FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS & SUPPORTING SATELLITE PIRACY CLAIMS

2.  DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States. Over the company's life, DIRECTV has invested billions of dollars to develop a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide to be used for entertainment purposes (the "Satellite Programming"). DIRECTV relays digital signals from within the United States up to satellites hovering thousands of miles above Earth. Those signals are then broadcast back to Earth. DIRECTV's Satellite Programming is received through the use of a fixed outdoor satellite dish ("Satellite Dish") designed to capture satellite signals. The Satellite Dish is connected by cable to an indoor satellite receiver ("Satellite Receiver") which is then connected by cable to a television monitor.

3.  While the signal is beamed from space to various areas and can be received by installing a Satellite Dish, the signal is not usable without paying DIRECTV a fee to use its television broadcast services. To prevent the unauthorized reception and use of DIRECTV's broadcasts by individuals who have not paid for DIRECTV's service, DIRECTV uses encryption technology to digitally scramble the signal making the signal unusable until it is unscrambled. The Satellite Receiver is the component that makes descrambling possible. Each Satellite Receiver contains a removable access card that manages the opening and closing of television channels offered by DIRECTV (the "Access Card"). An Access Card is identical in size and shape to a credit card, but also

holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the Satellite Dish. When properly operated, Access Cards can be electronically programmed by DIRECTV to close or open television channels. It is, however, the programmable nature of these Access Cards that is the primary basis for this dispute.

4. Once a DIRECTV customer pays a subscription fee, DIRECTV electronically directs the Access Card to unscramble portions of the satellite signal allowing customers to view programs on their televisions and/or listen to certain high quality audio programs communicated by satellite. Through the Access Card, DIRECTV can provide many different levels of service to individual customers. Each customer usually pays for the service on a monthly basis. In addition to the programming packages paid for on a monthly basis, certain DIRECTV satellite broadcasts, such as professional sports packages and pay-per-view movies, remain blocked and can be spontaneously purchased on a per-show or per-package basis using the customer's remote control or through a telephone call to DIRECTV. The Access Card records those purchases.

5. DIRECTV's main revenue source is subscriptions paid by properly authorized users of its signals; obviously then, DIRECTV has a significant interest in preventing the unauthorized receipt and use of DIRECTV Satellite Programming. Despite the encryption technology used to protect the DIRECTV signal, there are many individuals within the United States and surrounding foreign countries involved in the development of devices and equipment (including the illegal programming of valid Access Cards) used to surreptitiously pirate DIRECTV's signals (collectively referred to

as "Pirate Access Devices"). The use of such Pirate Access Devices commonly provides the user with access to all of DIRECTV's Satellite Programming with no payment to the company.

6. The defendant in this action is a resident of the State of Texas. Upon information and belief, the defendant has purchased and used illegal Pirate Access Devices that are designed to permit viewing of DIRECTV's television programming without authorization by, or payment to, DIRECTV.

### *DIRECTV Obtained Records Related to DSSPRO/Li Sang*

7. On or about November 29, 2001, DIRECTV executed Writs of Seizure with the assistance of the U.S. Marshal Service, in the matter of DIRECTV v. Derek Trone (hereinafter "Trone") et al, Civil Action No. SA CV 01-370 DOC (ANx), in the United States District Court for the Central District of California against Li Sang and his business known as Digital Source Solutions d/b/a/ DssPro (hereinafter "DSSPRO"). DSSPRO sold and distributed satellite signal theft devices primarily through its websites, "www.dsspro.com," "www.dssna.com," and " www.dsszone.com." Mr. Sang and DSSPRO were physically located in Indiana, but, due to the expansive reach of internet sales, Mr. Sang was able to conduct business nationwide. During and subsequent to the raids, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts, and other records. Those records evidence Defendant's purchases of illegal Pirate Access Devices. In reliance upon those records and other information, and upon information and belief, DIRECTV sets forth the allegations in this Complaint.

8.  Defendant's activities violate federal telecommunication and wiretapping laws and state statutory and common law. As a result of the defendant's decisions to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against the defendant's continued possession and/or use of Pirate Access Devices.

### III. JURISDICTION

9.  DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

10. This lawsuit is brought pursuant to several federal statutes prohibiting the interception of satellite communications, including the Cable Communications Policy Act of 1984, (47 U.S.C. §§ 521, *et seq*) (the "Communications Act"), and the Electronic Communications Policy Act of 1986, (18 U.S.C. § 2510, *et. seq*), Texas law (TEX. CIV. PRAC. & REM. CODE §123, et seq), and as an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals. This Court has jurisdiction of the subject matter to this action under 28 U.S.C. § 1331, pursuant to which the United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. Moreover, this Court has supplemental jurisdiction over DIRECTV's state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over the parties in this action. The activities over which DIRECTV complains and which give rise to this action took place in the State of Texas; more particularly, Defendant's acts of violating federal laws and

DIRECTV's proprietary rights as distributor of the satellite programming transmission signals took place within the Southern District of Texas. Further, upon information and belief, the Defendant resides within the State of Texas; thus, this Court has personal jurisdiction over the Defendant.

## IV. VENUE

12.   DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

13.   Venue is proper in this the United States District Court for the Southern District of Texas under 28 U.S.C. §§ 1391(b) as this action arises under the laws of the United States and the defendant resides within the State of Texas. Moreover, a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas (28 U.S.C. § 124).

## V. PARTIES

14.   DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

15.   Plaintiff, DIRECTV, is at all times relevant hereto a corporation incorporated under the laws of the State of California. As a major distributor of satellite television programming, DIRECTV has a significant interest in maintaining and securing the integrity of its satellite transmissions of television programming and in prohibiting the unauthorized reception and use of the same.

16.   As part of its efforts to combat piracy, DIRECTV periodically develops and administers electronic countermeasures, which are commonly referred to in the satellite

piracy community as "ECMs." ECMs involve sending a stream of data that targets access cards using known modified software code and disables those access cards.

17. In response to DIRECTV's ECMs, and in particular to a highly successful ECM known in the pirate community as "Black Sunday," satellite pirates have developed devices referred to as, among other things, including but not limited to bootloaders, dead processor boot boards, glitchers, HU loaders, emulators, unloopers, and programmers that employ hardware and software and/or a combination of purchases to restore pirate access cards' ability to illegally circumvent DIRECTV's encryption protection and view DIRECTV programming.

18. Defendant, Alfredo Lozano ("Defendant Lozano"), resides and/or conducts business at 2304 Shidler Drive, Brownsville, Texas 78521. Upon information and belief, Defendant Lozano purchased one or more Pirate Access Devices from one or more pirate device dealers as described below. Defendant Lozano placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers. Specifically, these illegal purchases included the following transactions:

    a. Upon information and belief, on or about August 2, 2001, Defendant Lozano purchased four (4) "Terminator Bootloaders" from Li Sang. The order was shipped to Defendant Lozano at Defendant's address in Brownsville, Texas.

    b. Upon information and belief, on or about August 2, 2001, Defendant Lozano purchased three (3) "Atomic Bootloaders" from Li Sang. The order was shipped to Defendant Lozano at Defendant's address in Brownsville, Texas.

19. Defendant Lozano is sometimes hereinafter referred to as "Defendant."

20. Upon information and belief, Defendant received Pirate Access Devices through various mail sources, effectively importing such illegal devices into the State of Texas; Defendant has a reason to know that such device is used to illicitly decrypt Satellite Programming. Upon information and belief, Defendant displayed Satellite Programming and such Satellite Programming was displayed without authorization from DIRECTV. Importantly, Defendant's possession and use of Pirate Access Devices provides them access to all television programs transmitted by DIRECTV, including access to all pay-per-view movies, boxing and other special programs, and sports programming at all times. The value of the programs that Defendant was capable of viewing without authorization may easily reach thousands of dollars in a single year.

21. On information and belief, DIRECTV alleges that Defendant received the Satellite Programming by means including but not limited to: (a) maintaining Satellite Dishes capable of receiving satellite programming on television monitors and further maintaining electronic devices which enable them to receive, unscramble, and exhibit encrypted Satellite Programming transmissions without authorization; and/or (b) by such other means to effectuate the unauthorized reception of the Satellite Programming which are unknown to DIRECTV and known only to Defendant.

22. More importantly, upon information and belief, the Defendant may have engaged in an enterprise to distribute and/or resell the devices purchased from the Li Sang. Upon information and belief, the Defendant profited from his enterprise.

## VI. DISCOVERY OF ILLEGAL CONDUCT

23. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

24. DIRECTV devotes significant resources to preventing the unauthorized reception of its Satellite Programming and identifying persons or businesses engaged in such illegal activity. Despite these efforts, DIRECTV first obtained the mass of records after the raids as indicated in the forgoing paragraphs. More importantly, DIRECTV first discovered Defendant's identity and involvement in pirating Satellite Programming after spending significant time analyzing and interpreting those records.

## VII. CAUSES OF ACTION

### Count 1 - Damages for Violations of Cable Communications Policy Act
### (47 U.S.C. § 605(e)(3)(C))

25. DIRECTV incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

26. DIRECTV alleges on information and belief, that Defendant effected unauthorized interception and receipt of Satellite Programming through use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite Programming where Defendant is located, or by such other means which are unknown to DIRECTV and known only to Defendant.

27. Each of Defendant's acts violates federal law. Defendant, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception, and exhibition of Satellite Programming transmitted

by DIRECTV. Further, upon information and belief, Defendant used such communications for his own benefit or for the benefit of others who were not entitled to such communications. Each of these acts is a practice prohibited by 47 U.S.C § 605(a).

28. DIRECTV is a person aggrieved by the Defendant's violations of 47 U.S.C. § 605 and is authorized to institute this action against the Defendant pursuant to 47 U.S.C. § 605 (e)(3)(A).

29. Defendant's violations of 47 U.S.C. § 605 have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming. DIRECTV is entitled to costs, reasonable attorneys' fees, actual damages suffered, and profits obtained by Defendant attributable his illegal conduct.

30. Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. § 605(a).

### Count 2 - Damages for Violations of 18 U.S.C. § 2511

31. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

32. For further cause of action, DIRECTV alleges that Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV. Defendant further disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know, that the information was obtained through the interception of electronic

communications in violation of 18 U.S.C. § 2511. Upon information and belief, Defendant further intentionally used or endeavored to use the contents of electronic communications knowing, or having reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C § 2511.

33. DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2511.

34. Due to Defendant's wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by Defendant as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendant acted in violation of 18 U.S.C. § 2511.

### Count 3 - Damages for Possession, Manufacture, and/or Assembly of Electronic, Mechanical or Other Device or Equipment
### (18 U.S.C. § 2512)

35. DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

36. By way of its third cause of action, DIRECTV alleges that Defendant intentionally possessed, manufactured, and/or assembled an electronic, mechanical or other device knowing, or having a reason to know, that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or electrical communications and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce. More particularly,

Defendant himself, or someone at his direction, sent and/or received Pirate Access Devices by means of the United States Postal Service or commercial mail carrier.

37. DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2512.

38. Due to Defendant's wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV as a result of Defendant's conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendant acted in violation of 18 U.S.C. § 2512.

### Count 4 - Damages for Willful Assembly or Modification of Devices or Equipment
### (47 U.S.C. § 605(e)(4))

39. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

40. Upon information and belief, Defendant knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing or having reason to know, that the device or equipment is used primarily to facilitate the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity. Upon information and belief, Defendant actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV Satellite Programming. Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers, Defendant engaged in the

unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

41. Such conduct by Defendant violates 47 U.S.C § 605(e)(4) and such activity entitles DIRECTV to statutory damages in a sum not less than $10,000 or more than $100,000, as the Court considers just for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

42. DIRECTV is a person aggrieved by the Defendant's independent violations of 47 U.S.C. § 605 and is authorized to institute this action against the Defendant pursuant to 47 U.S.C. § 605 (e)(3)(A).

### Count 5 - Civil Conversion

43. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

44. By virtue of the conduct set forth above, Defendant has unlawfully converted DIRECTV's property for Defendant's use and benefit.

45. Such conversion was done intentionally and wrongfully by Defendant to deprive DIRECTV of its proprietary interests and for Defendant's direct benefit and advantage.

46. Due to Defendant's wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

### Count 6 – Interception of Communication
(TEX. CIV. PRAC. & REM. CODE § 123.001, *et. seq.*)

47. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

48. DIRECTV transmits satellite communications in part by wire or cable. More specifically, the Satellite Dish, receivers, and television necessary to utilize DIRECTV's Satellite Programming are connected by wire and cable. Finally, DIRECTV's Satellite Programming contains information that is obtained and/or perceived by aural acquisition, particularly including all audio communication services that accompany video transmissions.

49. Upon information and belief, Defendant acquired and/or used Pirate Access Devices to intercept, or attempt to intercept, DIRECTV's Satellite Programming information constituting an extraordinary use of satellite and television viewing equipment. Defendant's conduct violates Chapter 123 of the Texas Civil Practices and Remedies Code. As a result of Defendant's conduct, DIRECTV may obtain statutory damages of $10,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs.

## VIII. REQUEST FOR INJUNCTIVE RELIEF

50. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

51. DIRECTV further alleges that unless restrained by this Court, the Defendant will continue to receive, intercept, transmit, and exhibit the Satellite Programming, illegally and without authorization by or payment to DIRECTV in violation of 47 U.S.C. § 605.

52. The violations of 47 U.S.C. § 605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

53. DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from the Defendant's unlawful conduct. In addition to diminishing DIRECTV's revenues, the Defendant's unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming, thereby impairing DIRECTV's ability to enhance its future growth and profitability. DIRECTV has no adequate remedy at law to redress the violations set forth above.

54. Further, DIRECTV is entitled to preliminary and other equitable or declaratory relief as may be appropriate under the circumstances in accordance with 18 U.S.C. § 2520(b)(1). DIRECTV requests that Defendant be directed to cease the use of any and all Pirate Access Devices, relinquish all such devices to DIRECTV, and not engage in such conduct in the future.

## IX. PRAYER

WHEREFORE, Plaintiff, DIRECTV, INC., prays that this Court enter judgment in its favor and against Defendant in the form as follows:

a. Declare that Defendant's assembly, modification, distribution, and possession of illegal devices or equipment, unauthorized interception, reception, and exhibition of DIRECTV's electronic communications, or his assistance in the performance of such unauthorized actions, is a violation of 47 U.S.C. § 605, 18 U.S.C. §§ 2511 & 2512, and TEX. CIV. PRAC. & REM. CODE § 123.002.

b. Award DIRECTV statutory damages in the amount of $10,000.00 for each violation of 47 U.S.C. § 605, plus an additional $100,000.00 for each violation pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendant's violations of 47 U.S.C. § 605;

c.  Alternatively, award DIRECTV statutory damages in the amount of the greater of $10,000 or $100 per day for each day Defendant violated 18 U.S.C. § 2511 and/or § 2512, or alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendant's violations of 18 U.S.C. §§ 2511 or 2512;

d.  Alternatively, award DIRECTV statutory damages of $10,000 for each violation of TEX. CIV. PRAC. & REM. CODE § 123.002;

e.  In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin Defendant, and all persons in active concert or participation with him, from (i) possessing illegal access cards or other illegal devices or equipment (ii) interfering with DIRECTV's proprietary rights, (iii) intercepting, receiving, divulging, or displaying DIRECTV's Satellite Programming without prior written consent of DIRECTV; and (iv) acting in further violation of the above-described statutes;

f.  That this Court award DIRECTV punitive damages as provided by statutory law;

g.  That this Court award DIRECTV its costs, including reasonable attorneys' fees, pre-judgment and post-judgment interest, and

h.  Such other relief to which DIRECTV may be entitled.

DATED this 3rd day of November, 2003.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
**Lecia L. Chaney**
State Bar No. 00785757
Fed. I.D. #16499
**Christopher E. Moore**
State Bar No. 24011075
Fed. I.D. #

1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telefax   : (956) 541-2170

OF COUNSEL:

GREER, HERZ & ADAMS, LLP

**Joe A.C. Fulcher**
Federal ID No. 14126
St. Bar No. 07509320
**Kelly-Ann F. Clarke**
Federal ID No. 27195
St. Bar No. 24027929
**Robert A. Swofford**
Federal ID No. 19403
St. Bar No. 00791765
**Joseph R. Russo, Jr.**
Federal ID No. 22559
St. Bar No. 24002879
One Moody Plaza, 18th Floor
Galveston, Tx  77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)